# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CLARENCE MONTGOMERY, APPELLANT* | *§* | *APPEAL FROM THE 349TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | *§* | *HOUSTON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Clarence Montgomery appeals his conviction for theft by check in an amount greater than $1,500.00 but less than $20,000.00. On appeal, Appellant contends that the trial court abused its discretion in permitting hearsay testimony and that the same evidence also violates his constitutional confrontation rights. We affirm.

### BACKGROUND

Appellant was indicted for passing "hot checks" after opening a checking account.[1] At trial, a bank vice president testified that Appellant opened a new account and funded it with $20.00. Appellant never deposited more funds in the account. Appellant then proceeded to write several checks without making adequate deposits to pay the checks. Due to the bank's automatic overdraft protection, the bank paid the first $500.00 of the hot checks, but then began to return the other checks to the merchants that received them. After sixty days, the bank closed the account. The bank's records indicated there were almost thirty debits and withdrawals on the account, but only the one initial $20.00 deposit with which Appellant opened the account.

Local merchants and their employees testified to receiving checks from Appellant. Some of the witnesses identified Appellant as the one who gave them the check. One store clerk at Lovelady

---

[1] The indictment contained twenty-two counts of theft by check against Appellant. After the State rested at trial, the trial court granted Appellant's motion for directed verdict on counts one through fifteen due to insufficient evidence. This appeal concerns only counts sixteen through twenty-two.

Farm and Ranch store identified Appellant as the one who presented her with a $533.15 check for horse feed. When the check was returned unpaid by the bank, she called Appellant, who identified himself as Clarence Montgomery. She told him the check was returned, and Appellant said he would come take care of it, mentioning a problem with child support. However, he did not redeem the check. The owner of the Spring-Mar Grocery identified Appellant as the one who wrote the grocery store a hot check. The owner of Collins Tractor testified about a check for $553.76 that his business received, noting Appellant's driver's license number had been written on the check when it was taken. The clerk who took the check identified Appellant as the one who passed the check. The owner of Crockett Farm and Fuel identified Appellant as the person from whom he took a $386.00 check. The owner testified he went to Appellant's house at the address on the check and confronted him. Appellant said he would bring the money to cover the check the next day, but he did not. The president of Houston County Equipment testified about a check for $925.32 taken by his business, and identified the photocopy of Appellant's driver's license made by his employee when Appellant passed the check. The owner of Shotwell's Farm and Feed testified about Appellant passing a check for $398.00 for horse feed he bought.

When the State offered the bank's documentation of Appellant's account into evidence through the bank's vice president, Appellant raised numerous objections. His objections included that the documents and the statements within them contained hearsay, and the admission of those documents violated Appellant's constitutional right to confront and cross examine the witnesses regarding that testimony and documentation. The trial court overruled Appellant's objections.

Appellant testified that he was working the evening shift at the Pilgrim's Pride chicken processing plant in Lufkin, as well as doing side jobs in home repair. He testified he was bringing home between $1,000.00 and $1,200.00 per month from his job at Pilgrim's Pride, but that his child support payments were about $800.00 a month. Appellant testified that in late May or early June of 2011, his hours at Pilgrim's Pride were reduced. This was around the time that Appellant opened the account.

Appellant testified that Pilgrim's Pride initially transferred employees' earnings to some sort of debit card. He testified that because of the fees charged for the use of the card and the union fees that were deducted through the debit cards, some employees, including him, opened personal bank accounts and had Pilgrim's Pride deposit their earnings into the bank account. Appellant said he opened the account at First Community Bank to receive his Pilgrim's Pride earnings, which allowed him to avoid the fees for the Pilgrim's Pride debit card and the union dues. However, he claimed

2

that his checks from Pilgrim's Pride "didn't make it" into the bank account. Appellant explained that before he could go and inform the bank about his problem, he was arrested. He identified and admitted he wrote the check to the Lovelady Farm and Ranch store for horse feed. He admitted he wrote the check to Spring-Mar Grocery and the check to Collins Tractor for some tools. He identified and admitted he wrote the check to Crockett Farm and Fuel for some hay and feed for horses, the check to Houston County Equipment for a couple chainsaws, and the checks to the Super Shop and to Shotwell's Farm and Feed.

Appellant testified he called the bank, and asked them to get a total of how much he needed to pay the checks and fees, so he could get a "title loan" and pay off the bank. But he said he was arrested before he could resolve the issue. Appellant stated that it was his intent to pay the hot checks off because of "the situation that I'm in, the way my life has been for the last 20 years." He also confirmed that he knew at that time that there was no money in the Community Bank account. Later, he testified he did not know there was no money in the account, or that the checks were being returned due to insufficient funds. Appellant also testified to receiving thousands of dollars for home repair work, landscaping work, and highway clearing, but he did not deposit that money into his accounts.

Rita Rodriguez, who handled hot checks for the Houston County District Attorney's Office, testified that, when the first hot check came into her office, she sent a letter to Appellant advising him of the hot check. She then called and talked with Appellant on July 29, but Appellant told her that child support payments had taken all his money and he did not have money at that time. As more checks came in, she continued to send him notices at the addresses listed on his driver's license and on his checks, but he did not respond. She also attempted to call him at the telephone number that he had given the merchants and which she had previously called and spoken with him, but she was thereafter unable to contact him. Because Appellant failed to come and repay the hot checks, and continued to ignore the later notices of additional hot checks, the hot check office referred the hot checks to the district attorney for prosecution.

The jury found Appellant guilty and assessed punishment at six years of imprisonment and a $5,000.00 fine.[2]

---

[2] The jury found enhancements alleged in the indictment for prior offenses to be true, raising the punishment level for the charged offenses to that of a second degree felony.

## HEARSAY AND CONFRONTATION

In his sole issue, Appellant contends the trial court erred in admitting Exhibit "9," which consisted of bank records, over Appellant's objection that the exhibit was hearsay, and that the exhibit's admission violated his constitutional right to confront and cross examine the witnesses who made the records.

### Standard of Review

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). An abuse of discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State*, 101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We will affirm the trial court's ruling if it lies within the zone of reasonable disagreement. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

We review de novo the trial court's ruling admitting evidence over a Confrontation Clause objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). Whether a statement is testimonial under the Confrontation Clause is a question of law. *See De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

### Hearsay and the Business Records Exception

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Texas Rule of Evidence 803 provides a list of exceptions to the hearsay rule where the availability of the declarant is immaterial. TEX. R. EVID. 803. One such exception is

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

TEX. R. EVID. 803(6).

Rule 803(6) does not require that the person authenticating the record be either the creator of the record or have personal knowledge of the information recorded therein. *Campos v. State*, 317 S.W.3d 768, 777–78 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Rather, the testifying witness need only have knowledge of how the record was prepared. *Id.* at 778.

**Confrontation Rights and Business Records**

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. This protection prohibits the admission of testimonial statements unless the declarant is unavailable to testify and the accused had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004); *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010).

In the Confrontation Clause context, "business . . . records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 587 U.S. 305, 324, 129 S. Ct. 2527, 2539-40, 174 L. Ed. 2d 314 (2009); *see also Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367 (noting "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records. . . .). Federal courts have concluded that bank records qualifying as business records are generally not testimonial. *See, e.g., United States v. Herrera*, 466 Fed. Appx. 409, 425-26 (5th Cir. 2012) (holding that bank records and summary of those records did not violate Confrontation Clause because bank records were made and kept in ordinary course of business and not specifically prepared for trial); *United States v. Naranjo*, 634 F.3d 1198, 1213-14 (11th Cir. 2011) (same).

**Discussion**

Exhibit 9 consisted of bank records related to Appellant's account, including the signature card, payable on death beneficiary designation, and various "Account Activity Summar[ies]" that were generated when each statement period ended. The Account Activity Summaries are ordinary bank statements that identify the account holder, the number and amount of any deposits and withdrawals, overdraft fees, identification of the checks that were returned for insufficient funds, and attached computer generated copies of the deposit slip and the checks written on the account for that particular statement period.

The bank's vice president testified that she was the individual who opened the account for Appellant, and that the documents in Exhibit 9 were created the day Appellant opened the account or whenever the account activity summaries came out. She also specifically testified that the records were created in the ordinary course of the bank's business and made at or near the time the event occurred by someone with knowledge of the matters recorded in the documents. In other

words, the documents in Exhibit 9 were created prior to the anticipation of litigation by the bank as part of its ordinary business in tracking customer activity as "business records."

As we have stated, when the evidence is nontestimonial, the Confrontation Clause is not implicated or violated by the evidence's admission. Bank records are nontestimonial when they are created in the ordinary course of business and not specifically made for the purpose of litigation. *See Herrera*, 466 Fed. Appx. at 425-26; *Naranjo*, 634 F.3d at 1213-14. Moreover, bank records that qualify as "business records" under Texas Rule of Evidence 803(6) do not violate the hearsay rule and are admissible in response to a hearsay objection. *See Huff v. State*, 897 S.W.2d 829, 839-40 (Tex. App.—Dallas 1995, pet. ref'd). Since these documents were not made for the purposes of litigation and they qualify as business records, the trial court did not err in denying Appellant's Confrontation Clause objection and in admitting the bank records under the business records exception to the hearsay rule.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

SAM GRIFFITH
Justice

Opinion delivered April 16, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 16, 2014**

**NO. 12-13-00061-CR**

**CLARENCE MONTGOMERY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 12CR-045)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*